The STATE of Ohio, Appellee,

v.

LOTT, Appellant.

[Cite as *State v. Lott* (1999), 135 Ohio App.3d 198.]

Court of Appeals of Ohio,
Eleventh District, Ashtabula County.

No. 98–A–0048.

Decided Oct. 29, 1999.

*Thomas L. Sartini,* Ashtabula County Prosecuting Attorney, appellee.

*S. Kim Kohli,* for appellant.

CHRISTLEY, Presiding Judge.

Appellant, Baron Lott, appeals from his conviction in the Ashtabula County Court of Common Pleas on one count of child endangering with a specification of serious physical harm, a third-degree felony, in violation of R.C. 2919.22(A) and (E)(2)(c). Appellee, the state of Ohio, has filed an answer brief. For the reasons that follow, we affirm appellant's conviction and sentence.

On June 29, 1997, events occurred that resulted in the notification of the police about the physical condition of one of appellant's three children. An officer arrived and took several pictures of the child.

The child was brought to the Brown Memorial Hospital emergency room, where she was examined by Dr. Francisco Uytingco. Dr. Uytingco noticed that she had numerous bruises on her body in different stages of healing. He also diagnosed malnutrition and hypokalemia. More pictures were taken to document her condition.

As a result of the child's condition, appellant and his wife were charged with four counts of child endangering pursuant to R.C. 2919.22, one each involving neglect and one each involving the cruel abuse of the child. A specification was added to each count pursuant to R.C. 2919.22(E)(2)(c) charging that the conduct resulted in serious physical harm. The two defendants were subsequently tried together. At the conclusion of the state's case, appellant made an oral motion to the trial court for a directed verdict on both charges. The trial court dismissed the charge under R.C. 2919.22(B)(2) relating to the allegation of cruel abuse, finding that there was no evidence concerning any physical abuse of the victim. The trial continued on the remaining charge concerning neglect.

Appellant was found guilty of child endangering with the specification of serious physical harm and was sentenced to two years in prison, none of which was suspended. Appellant perfected a timely appeal. He asserts two assignments of error for our consideration:

"The evidence submitted was insufficient as a matter of law to sustain a conviction under O.R.C. §2919.22 that appellant recklessly created a substantial risk to the health or safety of [his daughter] by violating a duty of care, protection or support, or that any act or omission, if any, resulted in serious physical harm to the child."

"The verdict by the jury was against the weight of the evidence."

According to appellant, the evidence was insufficient to convict him of child endangering due to the following facts: (1) he was not the primary caretaker of the victim, (2) the evidence at trial showed that the bruising was sustained in an accidental fall and by playing with other children and (3) the child's stunted growth is not serious bodily harm as contemplated by the statute. We disagree.

When reviewing the sufficiency of the evidence to support a criminal conviction, a court must examine the evidence admitted at trial to determine whether the evidence, if believed, would convince the average juror of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, citing *Jackson v. Virginia* (1979), 443 U.S.

307, 99 S.Ct. 2781, 61 L.Ed.2d 560. See, also, *State v. Schlee* (Dec. 23, 1994), Lake App. No. 93–L–082, unreported, at 4, 1994 WL 738452.

In the instant matter, the state was required to prove that appellant violated R.C. 2919.22(A), which states, "No person who is the parent * * * of a child under eighteen years of age * * * shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support." The culpable mental state for this crime is recklessness. *State v. McGee* (1997), 79 Ohio St.3d 193, 680 N.E.2d 975, syllabus. R.C. 2901.22(C) states:

"A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist."

Appellant's argument that he was not the primary caretaker is immaterial to his conviction for child endangering and contrary to his own testimony at trial. Under Ohio law, parents have a legal duty to act to protect their children from harm. *State v. Sammons* (1979), 58 Ohio St.2d 460, 391 N.E.2d 713. Moreover, the state was not required to prove that appellant was the primary caretaker of the victim. Instead, the state was required to prove that appellant, who was the victim's father and who resided with the child and her mother, created a substantial risk to the health or safety of the child by violating his duty of care, protection, or support, and that the violation resulted in serious physical harm to his daughter. Nowhere in the statute is there a requirement that the accused be the primary caretaker of the alleged victim. Control alone is sufficient to satisfy R.C. 2919.22(A). *State v. Reed* (May 31, 1991), Lake App. No. 89–L–14–130, unreported, 1991 WL 95227.

Even if there were a question as to whether the state must prove that appellant was the primary caretaker, the evidence presented at trial was sufficient to show that he was directly involved with the day-to-day care of his daughter. For example, appellant testified that he made sure that each of his children was fed at least three times a day. This statement was supported by testimony from appellant's mother and others who testified that they had seen appellant feed the victim and the other two children on several occasions.

Appellant also argues that he was unaware that Dr. Nafisa Kondru, the children's pediatrician prior to June 1997, had made nutritional recommendations concerning the victim's care and that he never took the children to the doctor. However, there is sufficient and credible evidence to the contrary. Appellant himself testified that he tried to go to the doctor with the children whenever he could, but that sometimes he was unable. Appellant further testified that Dr.

Kondru had given him and his wife a sample of Toddler's Best for his daughter, which is an high-calorie drink used to help young children gain weight. Furthermore, appellant testified that he and his wife would mix cereal with the girl's formula because they had been told that her weight was below average. Appellant's own testimony demonstrated that he was aware of the victim's physical condition.

■   Appellant next argues that the state failed to prove that the victim's bruising was caused by his neglect, thereby negating the element of serious physical harm. However, the bruising was not the state's basis for proving the element of serious physical harm under R.C. 2919.22(E)(2)(c). Instead, the state based the element of serious physical harm on the fact that the girl was severely malnourished and dehydrated and that she was suffering from hypokalemia, placing the child in a life-threatening situation. The bruising was merely additional evidence of appellant's neglect, not the only evidence.

■   Appellant argued that the bruising was caused by a fall down the steps of the family home and also by the girl playing with her older brother. However, both Dr. Kondru and Dr. Utyingco testified that the bruises on the girl's body were in different stages of healing. Dr. Utyingco further testified that the victim's bruising could not have come from only one accident, while Dr. Kondru testified that the bruising was consistent with child abuse. Where there is conflicting evidence presented to the jury, concerning the source of the bruising, we must defer to the factual findings of the jury as to the weight to be given the evidence and the credibility of the witnesses. Consequently, this argument is unpersuasive.

■   Appellant's final argument concerning the sufficiency of the evidence is that the victim's stunted growth, a result of her malnutrition, does not rise to the level of serious physical harm. R.C. 2901.01(A)(5) defines serious physical harm to persons as (1) any mental illness or physical condition requiring hospitalization or prolonged psychiatric treatment, (2) any physical harm that carries a substantial risk of death, (3) any physical harm that involves some permanent incapacity or a substantial, temporary incapacity, (4) any physical harm that involves some permanent disfigurement or a serious, temporary disfigurement, or (5) any physical harm that involves acute pain causing substantial suffering or that involves any degree of prolonged or intractable pain.

According to appellant, the victim required only nutritional adjustments to alleviate her condition. As a result, he believes that there was no permanent disfigurement and no substantial risk of death. In support, appellant cites the testimony of Dr. Uytingco, who testified that while hypokalemia could be acutely life-threatening, the victim's condition was only health-threatening.

In contrast, Dr. Kondru testified that there was a substantial risk of death without immediate treatment because if a child is malnourished, her potassium level drops to a critical level. R.C. 2901.01(A)(8) defines substantial risk as follows:

" 'Substantial risk' means a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist."

According to Dr. Kondru, if the potassium level drops below a certain level, a child may develop a cardiac arrhythmia, which can lead to death. In the present case, the victim's condition was such that without treatment, death was a strong possibility. Clearly, appellant's conduct, or lack thereof, contributed to his daughter's condition.

Other evidence adduced at trial also supports appellant's conviction. When appellant's twenty-two-month-old daughter was brought to the hospital, her weight was equivalent to that of an average seven-month old. In addition, her cranial circumference and height were equivalent to that of an average nine-month old. Dr. Uytingco was quite emphatic in stating that even a child of below normal birth weight, which the victim was, would catch up "[w]ith proper nutrition."

As for medical treatment before June 29, 1997, the victim's pediatrician, Dr. Kondru, testified that she had missed several checkups since her birth. As a matter of fact, before June 30, 1997, Dr. Kondru had not seen appellant's daughter for almost a year. However, during that same time, appellant and his wife did bring their other children for periodic checkups.

Regarding evidence concerning the cause of the hypokalemia, the only evidence came from Dr. Uytingco, appellant's own witness, and it was unfavorable. Upon questioning by appellant's counsel, Dr. Uytingco testified:

"A. Hypokalemia can be caused from the diet, lack of potassium in the diet from emesis or vomiting, diarrhea. Those are primarily the cause of hypokalemia.

"Q. Do you know if this child had had a history of vomiting or diarrhea?

"A. Not when she was presented to the emergency room."

Thus, the most common alternative causes for hypokalemia were ruled out.

When looking at the record, we find that there was sufficient evidence to convict appellant of child endangering. Appellant's first assignment of error is without merit.

In his second and final assignment of error, appellant argues that the judgment was against the manifest weight of the evidence. When reviewing a claim that the judgment was against the manifest weight of the evidence, an appellate court must review the entire record, weigh both the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that a new trial must be ordered. *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 218–219, 485 N.E.2d 717, 720–721. See, also, *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, 546–547. Accord, *State v. Duong* (Dec. 11, 1998), Trumbull App. No. 98–T–0026, unreported, 1998 WL 964315, at 2.

Moreover, "[t]he discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction," *Martin*, 20 Ohio App.3d at 175, 20 OBR at 219, 485 N.E.2d 717. The role of the appellate court is to engage in a limited weighing of the evidence introduced at trial in order to determine whether the state appropriately carried its burden of persuasion. *Thompkins*, 78 Ohio St.3d at 390, 678 N.E.2d at 548–549. Additionally, the reviewing court must defer to the findings of the trier of fact as to the weight to be given the evidence and the credibility of the witnesses. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus.

In his brief, appellant incorporates by reference his arguments from his first assignment of error in asserting that his conviction for child endangering is against the weight of the evidence because there was no competent, credible evidence introduced at trial that could cause the jury to conclude that he recklessly acted or omitted any duty to his child that placed the child at substantial risk of health or safety. Furthermore, appellant argues that the jury failed to properly weigh the evidence regarding the issue of serious physical harm.

After reviewing the entire record and weighing the evidence presented by the state and all reasonable inferences, and considering the credibility of the witnesses, we conclude that the jury did not lose its way or create a manifest miscarriage of justice in connection with appellant's conviction for child endangering. The evidence shows that the victim was suffering from a life-threatening condition due to recklessly inflicted malnutrition. Moreover, the evidence, in its entirety, leads to the conclusion that this child was deliberately not given the same care as her healthy siblings. Thus, the inference can be reasonably drawn that appellant knew how to provide proper care and chose not to provide it for the victim. Appellant's citations were not the result of ignorance. As a parent of the child, appellant had a proactive duty to care for, protect, and support that

child.  The weight of the evidence clearly shows that appellant violated this duty. Appellant's second assignment of error is without merit.

For the foregoing reasons, appellant's assignments of error are without merit. The judgment of the trial court is affirmed.

*Judgment affirmed.*

NADER and WILLIAM M. O'NEILL, JJ., concur.